IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

ELIZABETH BLEVINS, *et al.,*     :
                                    :
    Plaintiffs,             :
                                      :
vs.                         : CIVIL ACTION NO. 15-00120-CG-B
                                      :
SEYDI VAKKAS AKSUT, *et al.,*    :
                                      :
    Defendants.           :

## REPORT AND RECOMMENDATION

This case is before the Court on Plaintiffs' Motion to Remand(Doc. 46), and Defendants' Motions to Dismiss(Docs. 4, 10, 20, 33, 37, 54). The motions, which have been fully briefed and are ripe for resolution, have been referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and S.D. Ala. CivLR 72(a)(2)(S). Upon consideration of all matters presented, the undersigned RECOMMENDS, for the reasons stated herein, that Plaintiffs' Motion to Remand be **denied**, that Defendants' Motions to Dismiss be **granted** as to Plaintiffs' RICO claims, and that this Court decline to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims and thus dismiss the claims without prejudice.

I.   **Background Facts**

This action was filed on February 6, 2015, in the Circuit Court of Dallas County, Alabama, by 181 Plaintiffs who claim that Defendant Seydi Vakkas Aksut, M.D., performed unnecessary

interventional cardiology procedures on them at medical facilities operated by Defendants Selma Heart Institute, P.C. ("SHI"),[1] Vaughan Regional Medical Center, LLC ("Vaughan"), LifePoint Hospitals, Inc. ("LifePoint Hospitals"), LifePoint RC, Inc. ("LifePoint RC"), LifePoint CSGP, Inc. ("LifePoint CSGP"), Baptist Health/Baptist Medical Center South ("Baptist Medical Center"), Jackson Hospital & Clinic, Inc. ("Jackson Hospital"), and various fictitious parties. (Doc. 1-1 at ¶¶ 182-190).

In the complaint, Plaintiffs have asserted twenty-three claims against these Defendants, including Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO") (Counts 1-3), Alabama Deceptive Trade Practices Act (Count 4), unjust enrichment (Count 5), money had and received (Count 6), outrage (Count 7), negligent entrustment (Count 8), negligence/wantonness (Count 9), negligent/wanton supervision/training (Count 10), negligent/wanton retention (Count 11), negligent/wanton hiring (Count 12), medical negligence/wantonness (Count 13), gross negligence (Count 14), lack of informed consent (Count 15), lack of consent/battery (Count 16), misrepresentation (Count 17), suppression (Count 18), deceit (Count 19), wrongful death (Count 20), conspiracy

---

[1] SHI is the legal entity through which Dr. Aksut practiced medicine. (Doc. 1-1 at ¶ 208).

(Count 21), vicarious liability (Count 22), and loss of consortium (Count 23). (Doc. 1-1 at ¶¶ 261-418). Plaintiffs seek an unspecified amount of compensatory and punitive damages (including statutory treble damages), as well as interest, costs, and attorney's fees. (Id.).

According to Plaintiffs, they are former patients of Defendants who underwent medically unnecessary and life-threatening interventional cardiology procedures performed by Defendant Dr. Aksut as part of a pattern or practice of wrongful conduct, resulting in both physical and financial harm to Plaintiffs. (Id. at ¶¶ 206-215). Plaintiffs allege that the Defendant hospitals/clinics had direct involvement in and participation with Defendant Aksut in the performance of these unnecessary procedures, that Defendants charged and received monies for the procedures, and that they knew or should of known that the procedures were unnecessary. (Id.). Plaintiffs allege that in November 2014, Defendant LifePoint Hospital began notifying them that they were victims of these wrongful acts. (Id.).

On March 6, 2015, Defendant Vaughan timely removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446. In its notice of removal, Vaughan asserts the existence of subject matter jurisdiction under § 1331 (federal question) based on

Plaintiffs' three RICO counts.[2]   (Doc. 1 at 3-4).   The remaining Defendants have consented to the removal.   (Docs. 2, 3, 5, 16). On March 20, 2015, Plaintiffs filed the instant motion seeking to remand this action to state court.   (Doc. 46).   Plaintiffs contend that the Class Action Fairness Act ("CAFA"), 28 U.S.C. §1332(d) annuls the Court's otherwise undisputed federal question jurisdiction and requires remand under CAFA's exceptions for "local" and "home state" controversies.   (Doc. 46 at 5, Doc. 46-1 at 10).   The motion has been fully briefed and is now ready for resolution.

### II. Motion to Remand

#### A. Standard of Review

Federal district courts "shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331.   The determination of whether an action "arises under" the laws of the United States is made pursuant to the "well-pleaded complaint rule," which provides that the plaintiff's properly pleaded complaint governs the jurisdictional determination. Blab T.V. of Mobile, Inc. v. Comcast Cable Commc'ns, Inc., 182 F.3d 851, 854 (11th Cir. 1999) (citing Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149 (1908)).   "[F]ederal courts

---

[2] Plaintiffs do not dispute the timeliness of the removal.

[have] jurisdiction to hear, originally or by removal from a state court, only those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 27-28 (1983). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 6 (2003).

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction. See Friedman v. New York Life Ins. Co., 410 F.3d 1350, 1353 (11th Cir. 2005) ("In removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand. See University of S. Ala. v. American Tobacco Co., 168 F.3d 405, 411 (11th Cir. 1999). The Eleventh Circuit has made clear that "courts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." Roe v. Michelin N.

5

Am., Inc., 613 F.3d 1058, 1062 (11th Cir. 2010).

### B. Analysis

As stated, in its notice of removal, Defendant Vaughan asserts that this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) because of the presence of the federal RICO claims, 18 U.S.C. § 1962, contained in counts 1-3 of Plaintiffs' complaint. (Doc. 1 at 3-4). Notably, Plaintiffs do not dispute that the Court has federal question jurisdiction over this case on the basis of the federal RICO claims.[3] (Doc. 46-1 at 18, 21). Rather, Plaintiffs argue that the Class Action Fairness Act ("CAFA"),[4] 28 U.S.C. § 1332(d),

---

[3] Plaintiffs state, "[t]o be clear, this court has original jurisdiction under Section 1331 . . ." (Doc. 91 at 5; Doc. 46-1 at 21).

[4] In Lowery v. Alabama Power Co., 483 F.3d 1184, 1193-95 (11th Cir. 2007), the Eleventh Circuit described CAFA as follows:

> Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel. . . . CAFA seeks to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications. . . . CAFA amends the federal diversity jurisdiction statute, 28 U.S.C. § 1332, by inserting a new subsection, § 1332(d). This new subsection works a sea change in diversity jurisdiction for certain class actions. It broadens diversity jurisdiction by establishing lower threshold requirements for jurisdiction and abrogating

(Continued)

"predominates" § 1331 in cases such as the present one involving allegations of class or mass actions, rendering the Court unable to exercise its federal question jurisdiction and requiring remand under CAFA's "home state" and "local" controversy exceptions.[5]  (Doc. 46-1 at 5, 10, 22).  Plaintiffs' argument is misplaced.

It is axiomatic (and undisputed by the parties) that this Court has the authority to exercise subject matter jurisdiction

---

long-established precedent.  Subject to certain exceptions designed to keep purely local matters and issues of particular state concern in the state courts, § 1332(d)(3) to (5), CAFA provides federal courts with jurisdiction over class actions provided that: the number of plaintiffs in all proposed plaintiff classes exceeds one hundred, § 1332(d)(5)(b); any member of the plaintiff class is diverse from any defendant, § 1332(d)(2); and the aggregate of the claims of individual class members exceeds $5,000,000, exclusive of interests and costs. § 1332(d)(2), (6). . . .

Id.

[5] According to Plaintiffs, "CAFA is an act by Congress that takes away a district court's authority to exercise original jurisdiction" under § 1331 (Doc. 46-1 at 19); CAFA "preclude[s]" the Court "from exercising original jurisdiction" under § 1331 (id. at 21); CAFA's exceptions, §§ 1332(d)(3)-(4) (designed to keep local matters in the state courts), require the Court to abstain from exercising its § 1331 federal question jurisdiction and require remand (id. at 10, 22); and "[t]he general grant of original jurisdiction under Section 1331 is defeated by the specific and exclusive assignment of jurisdiction to the state courts under [CAFA] Section 1332(d)." (Doc. 91 at 6).

7

under § 1331 over federal questions, such as the federal RICO claims alleged in this case.  See Braswell Wood Co. v. Waste Away Grp., Inc., 2011 U.S. Dist. LEXIS 62337, *7, 2011 WL 2292311, *2 (M.D. Ala. June 9, 2011) ("Plaintiff's Second Amended Complaint included a RICO claim that unquestionably invoked this court's subject matter jurisdiction and obviated any inquiry into the propriety of Defendants' removal."); Eagletech Commc'ns Inc. v. Citigroup, Inc., 2008 U.S. Dist. LEXIS 49432, *57, 2008 WL 3166533, *16 (S.D. Fla. June 27, 2008) ("There is no question in this case that the federal RICO claims, Counts I-IV, arise under the laws of the United States so that federal question jurisdiction has been established. . . . "). Moreover, "the presence of even one claim 'arising under' federal law is sufficient to satisfy the requirement that the case be within the original jurisdiction of the district court for removal." Wisconsin Dep't of Corr. v. Schacht, 524 U.S. 381, 386 (1998).

It is further beyond dispute that CAFA is an amendment to the federal diversity statute, 28 U.S.C. § 1332, that expands federal diversity jurisdiction over interstate class actions. See Yescavage v. Wyeth, Inc., 2005 U.S. Dist. LEXIS 20392, *3, 2005 WL 2088429, *1 (M.D. Fla. Aug. 30, 2005) ("CAFA, which was signed into law on February 18, 2005, expands federal diversity of citizenship jurisdiction for class actions, inter alia, by

relaxing the diversity of citizenship requirements and allowing for the aggregation of the amount in controversy."); see also In Touch Concepts, Inc. v. Cellco P'ship, 788 F.3d 98, 102 (2d Cir. 2015) ("CAFA is, after all, an amendment to the diversity statute.").

Contrary to Plaintiffs' argument, there is nothing in the language of CAFA that suggests that any of its provisions were intended to "predominate" or strip the federal courts of its federal question jurisdiction under § 1331 in cases in which CAFA would also confer jurisdiction. And, Plaintiffs have presented no authority suggesting that Congress intended to annul federal question subject matter jurisdiction under § 1331 in cases in which CAFA would also apply, and this Court has found no such authority.[6]

Suffice it to say that Defendant Vaughan did not invoke CAFA diversity jurisdiction under § 1332(d)(2) in its notice of removal, and the exceptions to CAFA diversity jurisdiction in § 1332(d)(4) have no impact on this Court's exercise of subject matter jurisdiction under § 1331, which is an entirely separate and distinct basis for jurisdiction. See Air China, Ltd. v.

---

[6] Plaintiffs concede that they "cannot find a case that specifically states that Section 1332(d) [CAFA] prevails over the general grant of jurisdiction in Section 1331." (Doc. 91 at 6).

Kopf, 473 Fed. Appx. 45, 47-48 (2d Cir. 2012) (the contention that the district court lacked subject matter jurisdiction because "there was no diversity jurisdiction . . . [was] utterly meritless because federal question jurisdiction existed with respect to the RICO claim asserted against the defendants. . . . "). The Court thus concludes that Plaintiffs' RICO claims constitute a federal question under § 1331, and thereby establishes subject matter jurisdiction over this action. As a result, no further discussion of CAFA is warranted or required. See Sonic Auto., Inc. v. Price, 2011 U.S. Dist. LEXIS 90359, *24 n.2, 2011 WL 3564884, *8 n.2 (W.D.N.C. Aug. 12, 2011) ("Because subject matter jurisdiction is satisfied by the presence of federal questions in the Petition to Vacate, the Court does not reach the issue of CAFA jurisdiction pursuant to 28 U.S.C. § 1332(d)."); In re Anthem, Inc., 2015 U.S. Dist. LEXIS 120917, *52, 2015 WL 5286992, *3 (N.D. Cal. Sept. 9, 2015) (having found subject matter jurisdiction under ERISA, the Court "need not address the independent questions of whether diversity jurisdiction exists under CAFA or whether federal question exists under HIPAA and the HITECH Act."); Becnel v. KPMG LLP, 387 F. Supp. 2d 984, 986 n.1 (W.D. Ark. 2005) (where the court found federal question jurisdiction to exist, it was unnecessary to determine the merit of defendants' remaining arguments in favor of federal jurisdiction, including CAFA.).

III. Defendants' Motions to Dismiss Plaintiffs' RICO Claims

    A. Standard of Review

A defendant may move to dismiss a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) if the plaintiff has failed to state a claim upon which relief may be granted. "The standard of review for a motion to dismiss is the same for the appellate court as it [is] for the trial court." Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). "When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting GSW, Inc. v. Long County, 999 F.2d 1508, 1510 (11th Cir. 1993)). All "reasonable inferences" are drawn in favor of the plaintiff. St. George v. Pinellas County, 285 F.3d 1334, 1337 (11th Cir. 2002).

To survive a 12(b)(6) motion to dismiss for failure to state a claim, the complaint "does not need detailed factual allegations"; however, the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level . . ., on the assumption that all the

11

allegations in the complaint are true (even if doubtful in fact)." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). The plaintiff must plead "enough facts to state a claim that is plausible on its face." Id. at 570. Unless a plaintiff has "nudged [his] claims across the line from conceivable to plausible," the complaint "must be dismissed." Id.

"[U]unsupported conclusions of law or of mixed fact and law" will not defeat a Rule 12(b)(6) motion for dismissal. Dalrymple v. Reno, 334 F.3d 991, 996 (11th Cir. 2003) (quoting Marsh v. Butler County, Ala., 268 F.3d 1014, 1036 n.16 (11th Cir. 2001)). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]' — that the pleader is entitled to relief." Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). The U.S. Supreme Court has suggested that courts adopt a "two-pronged approach" when considering motions to dismiss: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" American Dental Ass'n v. Cigna Corp., 605 F.3d 1283, 1290 (11th Cir. 2010) (quoting Iqbal, 556 U.S. at 664). Importantly, "courts may infer from

12

the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." Id. (quoting Iqbal, 556 U.S. at 682).

B. **Analysis**

In their complaint, Plaintiffs contend that Defendants violated sections 1962(a), (c), and (d) of the RICO statutes (counts 1-3), and seek damages, including compensatory, punitive, and statutory treble damages.  (Doc. 1-1 at ¶¶ 261-317).  Defendants move to dismiss Plaintiffs' RICO claims for failure to satisfy RICO's heightened pleading standard and lack of standing.  (Doc. 10 at 4-5; Doc. 20 at 1; Doc. 33, Doc. 34 at 5, 11; Doc. 37, Doc. 38 at 8, 17; Doc. 54 at 3-4; Doc. 69 at 8-9)[7].

Because Plaintiffs' RICO claims in this case arise from an alleged pattern of racketeering consisting of fraud, their substantive RICO allegations must comply not only with the plausibility criteria articulated in Twombly and Iqbal, but also with Federal Rule of Civil Procedure 9(b)'s heightened pleading

_____

[7] Defendants have also sought the dismissal of Plaintiff's various state law claims on numerous grounds; however, because the undersigned finds that the RICO claims are due to be dismissed, and that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' various state law claims, Defendants' arguments regarding the state law claims have not been addressed.

13

standard.  <u>Ray v. Spirit Airlines, Inc.</u>, 2015 U.S. Dist. LEXIS 120033, *5, 2015 WL 5168367, *2 (S.D. Fla. July 27, 2015).  Rule 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b); <u>see also</u> <u>Ambrosia Coal & Constr. Co. v. Pages Morales</u>, 482 F.3d 1309, 1316 (11th Cir. 2007) (holding that civil RICO claims, which are "essentially a certain breed of fraud claims, must be pled with an increased level of specificity" under Rule 9(b)).[8]

---

[8] Under Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud." <u>Ambrosia</u>, 482 F.3d at 1317 (citing <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1380–81 (11th Cir. 1997)).  In <u>Brooks</u>, the court applied Rule 9(b)'s requirements to a RICO fraud complaint and held that plaintiffs failed to plead its civil RICO claims against each defendant with the required level of specificity because the complaint was devoid of specific allegations with respect to each defendant; rather, the plaintiffs "lumped together" all of the defendants in their allegations of fraud. <u>Brooks</u>, 116 F.3d at 1381. "In a case involving multiple defendants . . . the complaint should inform each defendant of the nature of his alleged participation in the fraud." <u>Ambrosia</u>, 482 F.3d at 1317 (citing Brooks, 116 F.3d at 1381). However, "Rule 9(b)'s heightened pleading standard may be applied less stringently, . . . when specific 'factual information [about the fraud] is peculiarly within the defendant's knowledge or control.'" <u>Hill v. Morehouse Med. Assocs.</u>, 2003 U.S. App. LEXIS 27956, *10, 2003 WL 22019936, *3 (11th Cir. Aug. 15, 2003) (citations omitted). Also, where "the alleged fraud occurred over an extended period of time and the acts were numerous, the specificity requirements are applied less stringently." <u>Lawrence Holdings, Inc. v. ASA Int'l, Ltd.</u>, 2014 U.S. Dist. LEXIS 154246, *29, 2014 WL 5502464, *11 (M.D. (Continued)

Turning to Plaintiffs' RICO claims in this case, RICO provides a private right of action under the following circumstances:

> Any person injured **in his business or property** by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee. . . .

18 U.S.C. § 1964(c) (emphasis supplied).

Section 1962 of Title 18 of the United States Code criminalizes the following activities:

> (a) It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity ... to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (b) It shall be unlawful for any person through a pattern of racketeering activity ... to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the

_____

Fla. Oct. 30, 2014) (citations omitted).  In addition, allegations of intent or knowledge "need only give rise to a strong inference that the defendants possessed the requisite fraudulent intent." Id., 2014 WL 5502464 at *12 (citations omitted).  "[C]onditions of a person's mind, such as intent or knowledge, may be alleged generally." Id. (citations omitted).

15

activities of which affect, interstate or foreign commerce.

(c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity.

(d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

Johnson Enters. of Jacksonville, Inc. v. FPL Group, Inc., 162 F.3d 1290, 1316 (11th Cir. 1998).

"Racketeering activity" includes "any act 'chargeable' under several generically described state criminal laws, any act 'indictable' under numerous specific federal criminal provisions, including mail and wire fraud,[9] and any 'offense' involving bankruptcy or securities fraud or drug-related activities that is 'punishable' under federal law." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 481–82 (1985). Subsections (a) and (c) of § 1962 require proof of a "pattern of racketeering activity," which is defined in 18 U.S.C. § 1961(5) as "at least two acts of racketeering activity." Muhammad v.

---

[9] "Mail or wire fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails or wires in furtherance of that scheme." American Dental, 605 F.3d at 1290 (citations omitted).

Option One Mortgage Corp., 2010 U.S. Dist. LEXIS 67528, *12, 2010 WL 2712250, *5 (S.D. Ala. July 6, 2010) (citing Johnson, 162 F.3d at 1316). The racketeering predicates must be related, and must amount to or pose a threat of continued criminal activity. Id., 605 F.3d at 1290-91 (citations omitted).

Defendants argue that Plaintiffs' RICO claims are due to be dismissed because Plaintiffs do not allege an injury to their "business or property" and, thus, lack standing to maintain a RICO claim. Defendants are correct that "[t]he requirement that the injury be to the plaintiff's business or property means that the plaintiff must show a proprietary type of damage." Grogan v. Platt, 835 F.2d 844, 847 (11th Cir. 1988). Without question, personal injuries and "*the pecuniary losses therefrom*" are excluded from the phrase "injured in his business or property" and are not recoverable under RICO. Id.

In Grogan, the Eleventh Circuit held that plaintiffs' claims for economic damages, such as loss of earnings and loss of support resulting from the personal injuries inflicted by defendants, were not recoverable damages under RICO. The court observed that "[t]he words 'business or property' are, in part, words of limitation," and "[h]ad Congress intended to create a federal treble damages remedy for cases involving bodily injury, injury to reputation, mental or emotional anguish, or the like, *all of which will cause some financial loss*, it could have

17

enacted a statute referring to injury generally, without any restrictive language." Id., 835 F.2d at 846-48 (emphasis in original). Therefore, the court held that the plaintiffs' pecuniary losses resulting from their personal injuries were not recoverable under RICO. Id. at 847.

In the present case, Plaintiffs' RICO allegations include assertions that between 2003 and 2014, Defendants induced Plaintiffs to undergo unnecessary interventional cardiology procedures for no reason other than to defraud Plaintiffs and their insurance providers of money. Plaintiffs allege that they suffered personal injuries from the unnecessary medical procedures and incurred medical expenses[10] as a result of Defendants' acts. (Doc. 1-1 at ¶¶ 1-181, 206-215, 252, 262-317). Plaintiffs claim that their medical payments to Defendants "constitute an injury in property."[11] (Doc. 83-1 at 27). However, because Plaintiffs' medical expenses constitute a pecuniary loss resulting from personal injuries, they are not

---

[10] Plaintiffs allege that Defendants engaged in wire and mail fraud in billing and collecting payments for the fraudulent medical procedures. (Doc. 1-1 at ¶¶ 206-317).

[11] Plaintiffs cite Reiter v. Sonotone Corp., 442 U.S. 330, 339 (1979), in support of their argument that payment from consumers constitutes a property injury. (Doc. 83-1 at 27). However, Reiter did not involve a RICO action and, more importantly, it did not involve personal injury to the plaintiffs; therefore, Plaintiffs' argument is unpersuasive.

recoverable under RICO.[12]  See Grogan, 835 F.2d at 845.

In Connor v. Halifax Hosp. Med. Ctr., 135 F. Supp. 2d 1198, 1209 (M.D. Fla. 2001), *aff'd* Connor v. Halifax Hosp. Med. Ctr., 2002 WL 32290997 (11th Cir. June 26, 2002) (unreported), the court similarly rejected a RICO claim against various health care providers who were accused of intentionally administering huge doses of morphine to patients receiving hospice care in order to hasten their deaths and maximize the defendants' financial recovery from the patients' insurance companies and governmental agencies paying for their care.  Id., 135 F. Supp. 2d at 1207.  The court observed that "a § 1964 plaintiff cannot recover under RICO for those pecuniary losses that are most properly understood as part of a personal injury claim," and held that the plaintiffs' claims for damages for "loss of life," including any "related pecuniary losses," were personal in nature, and, therefore, not cognizable under RICO.  Id. at 1209, 1219; see also Genty v. Resolution Trust Corp., 937 F.2d 899, 918 (3d Cir. 1991) (holding that plaintiffs could not recover damages for personal injuries caused by exposure to toxic waste

---

[12]  Plaintiffs also assert that they have incurred economic expenses in the form of increased premiums from their insurance providers as a result of Defendants' fraudulent billing.  (Doc. 86-2 at 28 n.10).  Assuming that assertion as true, it is no different than Plaintiffs' payments to Defendants for medical expenses flowing from their personal injuries and, thus, is not recoverable under RICO.

under RICO, including medical expenses incurred for treatment of illnesses caused by the exposure; rather, only damages to business or property, *i.e.*, loss of market value of their homes, was compensable); Keller v. Strauss, 2011 U.S. Dist. LEXIS 64403 (N.D. Ga. June 17, 2011)(where the plaintiffs alleged personal injuries and related pecuniary losses (i.e. related medical expenses), they lacked standing to assert a RICO claim.); Gaines v. Texas Tech University, 965 F. Supp. 886, 890 (N.D. Tex. 1997) (holding that the plaintiff's pecuniary losses resulting from his knee injury, including medical expenses and loss of an NFL contract, did not constitute property damage under RICO); Ehrich v. B.A.T. Indus. P.L.C., 964 F. Supp. 164, 167 (D.N.J. 1997) (where the plaintiffs' core injuries were medical in nature, *i.e.*, nicotine addiction and cancer, not proprietary, any incidental financial consequences, such as related medical expenses, did not give rise to a claim under RICO).

In the present case, Plaintiffs seek to base their standing under RICO on medical expenses incurred as a result of unnecessary medical treatment by Defendants. However, such expenses do not constitute property damage under RICO. Therefore, based on the foregoing authorities, Defendants' Motions to Dismiss Plaintiffs' RICO claims are due to be granted.

**IV. Supplemental Jurisdiction over State-Law Claims**

Under 28 U.S.C. § 1367(a), federal courts have "the power to exercise supplemental jurisdiction over all claims that arise out of a common nucleus of operative fact with a substantial federal claim." Gibson v. York, 569 F. Appx. 810, 812 (11th Cir. 2014) (quoting Upper Chattahoochee Riverkeeper Fund, Inc. v. City of Atlanta, 701 F.3d 669, 678 (11th Cir. 2012)). However, the Eleventh Circuit "encourage[s] district courts to dismiss any remaining state claims when the federal claims have all been dismissed prior to trial." Id. (citing Raney v. Allstate Ins. Co., 370 F.3d 1086, 1089 (11th Cir. 2004) ("[t]he decision to exercise supplemental jurisdiction over pendant state claims rests within the discretion of the district court. . . . . We have encouraged district courts to dismiss any remaining state claims when, as here, the federal claims have been dismissed prior to trial."); Ford v. Ocwen Loan Servicing, LLC, 2012 U.S. Dist. LEXIS 11224, *6, 2012 WL 280642, *2 (S.D. Ala. Jan. 31, 2012) ("[C]ase law is legion for the proposition that district courts must be circumspect about wielding their discretion to exercise supplemental jurisdiction under 28 U.S.C. § 1367 after all original-jurisdiction claims have been dismissed, particularly in the early stages of a case"); Weaver v. James Bonding Co., 442 F. Supp. 2d 1219, 1229 n.13 (S.D. Ala. 2006) ("Judges in this District have routinely declined supplemental jurisdiction" after dismissal of all federal

21

claims).

However, "declining to exercise supplemental jurisdiction is not a kneejerk action once all federal claims are dismissed; rather, the court should take into account concerns of comity, judicial economy, convenience, fairness, and the like." Doe v. City of Demopolis, 799 F. Supp. 2d 1300, 1317 (S.D. Ala. 2011) (citations omitted); see also Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine — judicial economy, convenience, fairness, and comity — will point toward declining to exercise jurisdiction over the remaining state-law claims").

In the case at hand, the relevant factors weigh heavily in favor of declining to exercise supplemental jurisdiction. This case is still in the early stages, and the state-law claims against Defendants have not been "tested via Rule 12(b) Motion." Cf. Ford, 2012 U.S. Dist. LEXIS 11224 at *6 n.3, 2012 WL 280642 at *2 n.3. Furthermore, discovery has been stayed in this case pending resolution of the instant motion. Moreover, with regard to the merits, this Court is "no better situated than any other tribunal to adjudicate this matter." Ford, 2012 U.S. Dist. LEXIS 11224 at *6 n.3, 2012 WL 280642 at *2 n.3. "[G]iven that state courts are better equipped than federal courts to decide

state-law issues, if anything the interests of judicial economy would be disserved by the exercise of supplemental jurisdiction here." Id. "Both comity and economy are served when issues of state law are resolved by state courts." Id.

It is also noteworthy that scores of cases involving substantially similar allegations against Defendant Seydi Vakkas Aksut, and several of the other named Defendants have been filed and are pending in the Circuit Court of Dallas County. See Little et al. v. Aksut, et al., Circuit Court of Dallas County, CV-2015-900131 (filed May 1, 2015); Mosley v. Aksut, et al., Circuit Court of Dallas County, CV-2015-900132 (filed May 1, 2015); Pettway, Sr., et al v. Aksut, Circuit Court of Dallas County, CV-2015-900133 (filed May 1, 2015; Bailey v. Vaughn Regional Medical Center, et al, CV-900145(filed May 11, 2015); Peterson v. Vaughn Regional Medical Center, et al, CV-900145(filed May 11, 2015); Reeves v. Vaughn Regional Medical Center, et al, CV-900145(filed July 6, 2015). Both comity and economy will be served by having these cases involving common facts and near identical issues and Defendants adjudicated in the Circuit Court of Dallas County. Accordingly, the undersigned finds that under these circumstances, the Court should decline to exercise supplemental jurisdiction over Plaintiffs' state law claims, and dismiss those claims without

23

prejudice so that they can be litigated in state court.[13] <u>Austin v. City of Montgomery</u>, 196 Fed. Appx. 747, 2006 U.S. App. LEXIS 19810, 2006 WL 2219726, *6 (11th Cir. 2006) ("When a court declines to exercise supplemental jurisdiction under § 1367(c)(3) because only state claims remain, the proper action is a dismissal without prejudice so that the complaining party may pursue the claim in state court.").

## V. **Conclusion**

Based on the foregoing, the undersigned RECOMMENDS that Plaintiffs' Motion to Remand be denied and that Defendants' Motions to Dismiss Plaintiffs' RICO claims be granted. The undersigned further RECOMMENDS that the Court decline to exercise jurisdiction over the remaining state-law claims, and that the state-law claims be dismissed without prejudice so that Plaintiffs can re-file them in state court.

### **NOTICE OF RIGHT TO FILE OBJECTIONS**

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen

---

[13] The undersigned observes that any statute of limitations concerns are alleviated by Congress's pronouncement that, when a court declines to exercise supplemental jurisdiction, any state limitations period "shall be tolled while the claim is pending [in federal court] and for a period of 30 days after it is dismissed." 28 U.S.C. § 1367(d).

(14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); **Fed. R. Civ. P.** 72(b); S.D. ALA. GenLR 72(c). The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

      **DONE** this **16th** day of **November, 2015.**

                          **/s/ SONJA F. BIVINS**
                        **UNITED STATES MAGISTRATE JUDGE**