IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ELIZABETH BLEVINS, *et al.,* | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| vs. | : | CIVIL ACTION NO. 15-00120-CG-B |
| | : | |
| SEYDI VAKKAS AKSUT, *et al.,* | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

This case is before the Court on Plaintiffs' Motions for
Leave to Substitute Personal Representatives (Docs. 155, 162,
163, 164). The motions, which have been fully briefed and are
ripe for resolution, have been referred to the undersigned for a
report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B)
and Local Rule 72.2(c). Upon consideration of all matters
presented, the undersigned **RECOMMENDS,** for the reasons stated
herein, that Plaintiffs' Motions for Leave to Substitute
Personal Representatives be **granted** as to Plaintiff Ruby Mae
Kinney (Doc. 163) and **denied** as to all other deceased
individuals listed in the motions at issue (Docs. 155, 162,
164).

## I.  Background

This purported class/mass action was filed on February 6,
2015, in the Circuit Court of Dallas County, Alabama, by 179

Plaintiffs[1] who claim that Defendant Seydi Vakkas Aksut, M.D., performed unnecessary interventional cardiology procedures on them at medical facilities operated by Defendants Selma Heart Institute, P.C. ("SHI"),[2] Baptist Health ("Baptist"), and Jackson Hospital & Clinic, Inc. ("Jackson").[3]   (Doc. 1-1).   In the complaint, Plaintiffs asserted twenty-three claims against these Defendants, including claims under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961, *et seq.* ("RICO"), the Alabama Deceptive Trade Practices Act, and other state torts. punitive damages, as well as interest, costs, and attorneys fees.  (Id.).

On March 6, 2015, Defendants removed the case to this Court pursuant to 28 U.S.C. §§ 1331, 1441, and 1446, asserting the existence of subject matter jurisdiction under § 1331 (federal question) based on Plaintiffs' RICO claims.   (Doc. 1 at 3-4).

---

[1] The Complaint purports to list 181 plaintiffs.  (Doc. 1-1 at ¶¶ 1-181).    However, two individuals, Johnnie Mae Sta[r][c]ks Jackson (¶¶ 54, 154) and Toni[a][e] Blue Shelton Lewis (¶¶ 160, 162), are listed twice.

[2] SHI is alleged to be a corporate entity through which Dr. Aksut practices medicine.  (Doc. 1-1 at 37 ¶ 208).

[3] Plaintiffs originally included claims against Defendants Vaughan Regional Medical Center, LLC ("Vaughan"), LifePoint Hospitals, Inc. ("LifePoint Hospitals"), LifePoint RC, Inc. ("LifePoint RC"), and LifePoint CSGP, Inc. ("LifePoint CSGP").  Plaintiffs dismissed those claims in their entirety on July 12, 2017. (Docs. 147, 148, 150, 151).

In March 2015, Defendants filed motions to dismiss Plaintiffs'
RICO and state law claims (Docs. 4, 10, 20, 33, 37, 54), and
argued that the deceased Plaintiffs were improperly named as
Plaintiffs. (Doc. 34 at 10).  On March 20, 2015, Plaintiffs
filed a motion to remand the action to state court.  (Doc. 46).
On March 28, 2016, the Court denied Plaintiffs' motion to remand
and granted Defendants' motions to dismiss Plaintiffs' RICO
claims on the ground that Plaintiffs had failed to allege injury
to their business or property and, thus, lacked standing to
maintain a RICO claim.  (Doc. 134, 135).  The Court declined to
exercise supplemental jurisdiction over Plaintiffs' state law
claims and dismissed the action in its entirety.  (Id.).  On
appeal, the Eleventh Circuit Court of Appeals, on March 1, 2017,
reversed the Court's RICO ruling, and issued a mandate to
reinstate the action.  (Docs. 141, 142).

At a status conference conducted on July 17, 2017,
Defendants again argued that the deceased Plaintiffs were
improperly named as Plaintiffs. The Court afforded Plaintiffs
until **July 31, 2017,** to file any motions for leave to substitute
personal representatives for the deceased Plaintiffs named in
the complaint.  On July 29, 2017, and July 31, 2017, Plaintiffs'
counsel filed the present motions, requesting leave to
substitute personal representatives for several of the deceased
individuals named in the Complaint.  (Docs. 155, 162, 163, 164).

These motions have been fully briefed and are now ready for resolution.

## II. **Discussion**

In Plaintiffs' motions to substitute personal representatives for the named deceased individuals, Plaintiffs include three groups of persons: (1) individuals identified as deceased but who are not named in the complaint and are not parties to this action; (2) Plaintiffs were named and identified as deceased at the time the Complaint was filed;[4] and (3) one named Plaintiff who is recently deceased. The Court addresses those categories of individuals separately.

### A. Deceased Individuals Not Named in the Complaint

The Court first addresses the individuals listed in the motions to substitute (Docs. 155, 162, 164) who are not parties to this action. Those individuals are:

        (1)   Bennett, Earnest C. (Doc. 155);
        (2)   Brooks, Larry (Doc. 155);
        (3)   Haynes, Robert (Doc. 155);
        (4)   Jones, Laura Mae (Doc. 155);
        (5)   Jones, Lorenzo (Doc. 155);
        (6)   King, Jr., Robert Lee (Doc. 155);
        (7)   Mitchell, Sr., Lee Dexter (Doc. 155);
        (8)   Morton, Thomasine (Doc. 155);
        (9)   Reese, Ceola (Doc. 155);

---

[4] The operative complaint in this case was filed on February 6, 2015, in the Circuit Court of Dallas County, Alabama. The complaint alleges that twenty-six of the named Plaintiffs are deceased. (Doc. 1-1). The case, along with the operative complaint, were removed to this Court on March 6, 2015. (Id.).

```
(10) Rose, Jr., Henderson (Doc. 155);
(11) Tolbert, Jessie Mae (Doc. 155);
(12) Watts, Roosevelt (Doc. 155);
(13) Williams, Gurther Dean (Doc. 155);
(14) Williams Walters, Ruth Eyvonne (Doc. 155);
(15) Wilmot, Joseph Michael (Doc. 155);
(16) Wilson, Jr., Johnny (Doc. 155);
(17) Cash, Wayne (Doc. 162);
(18) Harris, Jr., Fred (Doc. 162);
(19) Thomas, Tom (Doc. 164).
```

In their motions to substitute, Plaintiffs have requested, without argument or citation to legal authority, that the Court grant them leave to "substitute" personal representatives for the nineteen deceased individuals listed above (Docs. 155, 162, 164), none of whom is a party to this action. Apparently, Plaintiffs actually seek leave to amend the complaint to add new parties, namely, the personal representatives for the non-party deceased individuals listed above. Based on the circumstances presented, Plaintiffs' request is unavailing.

Rule 15 allows parties to amend their pleadings once within a short time after the filing of responsive pleadings, and after that, "only with the opposing party's written consent or the court's leave," which "[t]he court should freely give ... when justice so requires." Fed. R. Civ. P. 15(a)(2). The thrust of Rule 15(a) is to allow parties to have their claims heard on the merits, and accordingly, district courts should liberally grant leave to amend when "the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief."

In re Engle Cases, 767 F.3d 1082, 1108-09 (11th Cir. 2014)(quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). Nevertheless, a motion for leave to amend may appropriately be denied "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." Id. (quoting Bryant v. Dupree, 252 F.3d 1161, 1163 (11th Cir. 2001)). "Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, undue delay may clearly support such a denial." Id.

In the present case, Plaintiffs have cited no authority nor made any argument justifying such an amendment under the circumstances presented here. To the contrary, this action has been pending since February 6, 2015 (Doc. 1-1) and was removed to this Court on March 6, 2015. (Doc. 1). *Following removal*, on May 11, 2015, Plaintiffs filed a "First Amended Complaint" in the Circuit Court of Dallas County, Alabama (Doc. 124), purporting to add numerous new plaintiffs to this action, some of whom are listed above and the subject of the present motions. The problem with Plaintiffs' filing, of course, was that the First Amended Complaint was filed *in the state court, post-removal*, not in this Court where the action was actually

pending.

On July 7, 2015, Judge Granade addressed the invalidity of Plaintiffs' "First Amended Complaint" and held that, because the case had been removed to this Court at the time that Plaintiffs filed the "First Amended Complaint" in state court, the amended complaint was "clearly void *ab initio*" and invalidly filed, that "[t]he new plaintiffs listed in the First Amended Complaint [were] not currently before this Court," and that "any new plaintiffs must either file a separate action *or seek to join the action currently before this Court*." (Doc. 124 at 3-4) (emphasis added). Plaintiffs did neither.

Instead of seeking leave to file their amended complaint in this Court (adding the nineteen non-party individuals at issue here), two years later, Plaintiffs simply slipped the names of those nineteen non-party individuals into motions for leave to substitute personal representatives for the deceased Plaintiffs in this case. (Docs. 155, 162, 164). Even now, Plaintiffs have not filed a formal motion to amend the complaint to add these individuals as parties[5] and have cited no authority, argument, or

---

[5] The Court notes that Plaintiffs did include in one motion to substitute a request that the personal representative of the estate of one individual, Tom Thomas, be "joined to the instant matter." (Doc. 164). This is as close to a formal motion to amend the complaint to add new parties as Plaintiffs have come. In any event, as stated, Plaintiffs have cited no authority nor have they argued any factual basis for adding this individual or
(Continued)

factual basis for doing so at this time.[6]  Cf. Rosenberg v. Gould, 554 F.3d 962, 967 (11th Cir. 2009) ("When the shareholders requested leave to amend their complaint in a footnote to their brief in opposition to the defendants' motion to dismiss, it was within the discretion of the district court to deny that request. . . .") (citing Posner v. Essex Ins. Co., 178 F.3d 1209, 1222 (11th Cir. 1999) ("Where a request for leave to file an amended complaint simply is imbedded within an opposition memorandum, the issue has not been raised properly.").

Moreover, Plaintiffs have not explained their delay in seeking leave to amend the complaint to add these individuals as parties.  Plaintiffs have offered no explanation as to why they did not include the personal representatives for these deceased individuals as Plaintiffs at the time that they filed this lawsuit or, at a minimum, why they did not follow the explicit directives of this Court two years ago and seek leave to amend

_____

his personal representative as a new party to this action at this time.  For the same reasons discussed above, Plaintiffs' request to substitute/add the non-party individuals at issue herein is due to be denied.

[6] Plaintiffs' citation to authority is limited to a "reply brief" in which they addressed substitution of the deceased Plaintiffs *already named in this case*, not the addition of former non-parties.  (Doc. 178).

the complaint to add these individuals as parties. Indeed, Plaintiffs filed an amended complaint in state court, which this Court pointed out was a completely meaningless act given that it was post-removal. While it would have been a simple matter to re-file the amended complaint in this Court, for whatever reason, that was not done.

Based on the circumstances presented, the Court finds that Plaintiffs have been unjustifiably dilatory in failing to seek leave to amend the complaint to add the nineteen non-party individuals listed above and have offered no explanation or justification for failing to do so. Cf. Hester v. International Union of Operating Eng'rs, 941 F.2d 1574, 1578–79 (11th Cir. 1991) ("Clearly, Hester had ample opportunities to amend his complaint after first being put on notice by Hester II of the deficiencies in his fair representation claim, but inexplicably waited a very long time to do so. . . . [T]he district court did not abuse its discretion by refusing to allow it.").

For each of the foregoing reasons, Plaintiffs' motions for leave to substitute personal representatives for the nineteen non-party individuals named above (Docs. 155, 162, 164) are due to be **denied.**

**B. Deceased Individuals Named in the Complaint**

Next, the Court addresses the sixteen individuals included in Plaintiffs' Motions to Substitute who were deceased at the

time the Complaint was filed.  Those individuals are:

> (1) Beal, Lucille (Doc. 1-1 at ¶ 139; Doc. 155);
> (2) Blunt, Roy (Doc. 1-1 at ¶ 6; Doc. 155);
> (3) Brown, Marvin Burnett(Doc. 1-1 at ¶ 14; Doc. 162);
> (4) Custer, Sidney  (Doc. 1-1 at ¶ 25; Doc. 155);
> (5) Daniels, Janie Mae (Doc. 1-1 at ¶ 153; Doc. 155);
> (6) Dunklin, Sr., Peter (Doc. 1-1 at ¶ 149; Doc. 155);
> (7) Gragg, Nina Mae (Doc. 1-1 at ¶ 145; Doc. 162);
> (8) Hardy, Jr., Jim (Doc. 1-1 at ¶ 44; Doc. 162);
> (9) Johnson, Robbie (Doc. 1-1 at ¶ 56; Doc. 155);
> (10)Maul, James Curtis (Doc. 1-1 at ¶ 72; Doc. 155);
> (11)Muse, Joseph James (Doc. 1-1 at ¶ 108; Doc. 155);
> (12)Parnell, Ida (Doc. 1-1 at ¶ 93; Doc. 162);
> (13)Ponds, Sr., Willie (Doc. 1-1 at ¶ 169; Doc. 155);
> (14)Smith, Carrie L. (Doc. 1-1 at ¶ 116; Doc. 155);
> (15)Williams, Jr., Sam (Doc. 1-1 at ¶ 181; Doc. 155);
> (16)Withers, Rodney (Doc. 1-1 at ¶ 136; Doc. 155).[7]

As stated, the present action was filed in state Court on February 6, 2015, and at the time of filing, twenty-seven Plaintiffs were listed as deceased. (Doc. 1-1 at 13-33). Defendants removed the action to this Court on March 6, 2015. (Doc. 1).  Shortly after removal, Defendants began to object that the deceased Plaintiffs were not proper Plaintiffs and that personal representatives were required.  (Doc. 34 at 10).  More than two years later, Plaintiffs, on July 29, 2017 (Doc. 155) and July 31, 2017 (Doc. 162, 164), for the first time filed motions for leave to substitute personal representatives for sixteen of the twenty-seven Plaintiffs who were identified as

---

[7] Plaintiffs also seek to substitute the personal representative for Plaintiff, Ruby Mae Kinney, who died on July 2, 2017.  (Doc. 163).  Because this Plaintiff died after the lawsuit was filed, this request is considered separately herein.

deceased when the Complaint as filed in state court on February 6, 2015. The instant motions were filed as a result of a July 17, 2017 status conference conducted during which Defendants renewed their protests that the deceased Plaintiffs were not proper plaintiffs in this action. In response, the Court ordered Plaintiffs to file motions seeking leave to substitute personal representatives for the deceased Plaintiffs or face dismissal of their claims. (Doc. 154).

As discussed above, Rule 15 provides that leave to amend the complaint should be "freely give[n]" "when justice so requires." Fed. R. Civ. P. 15(a)(2). However, a motion for leave to amend may appropriately be denied where a party has engaged in dilatory tactics or "when the moving party offers no adequate explanation for a lengthy delay." Engle, 767 F.3d at 1119 n.37 (collecting cases) ("The party seeking leave to amend under Rule 15 bears the burden of establishing his entitlement to it — particularly where there has been such a long and seemingly unjustified delay."); see also Chitimacha Tribe v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir. 1982) ("When there has been an apparent lack of diligence, the burden shifts to the movant to prove that the delay was due to excusable neglect.").

In addition, "[w]hen a party seeks to amend a complaint to change plaintiffs, Rule 17 also comes into play." Engle, 767

11

F.3d at 1109 (citing Fed. R. Civ. P. 15, Advisory Comm. Notes, 1966 Amend.). Rule 17(a)(1) requires that "[a]n action must be prosecuted in the name of the real party in interest." "When the real party in interest is not properly named, Rule 17(a)(3) requires the court to provide an opportunity to substitute in the correct party before the court dismisses the case, provided that the substitution is made within a reasonable time after objection. Engle, 767 F.3d at 1109. "The Advisory Committee's comments make clear, though, that while the rule was added 'in the interests of justice,' '[t]he provision should not be misunderstood or distorted. It is intended to prevent forfeiture when determination of the proper party to sue is difficult or when an understandable mistake has been made.'" Engle, 767 F.3d at 1109 (quoting Fed. R. Civ. P. 17, Advisory Comm. Notes, 1966 Amend.). Accordingly, "most courts have interpreted ... Rule 17(a) as being applicable only when the plaintiff brought the action [in the name of the wrong party] as a result of an understandable mistake, because the determination of the correct party to bring the action is difficult." Engle, 767 F.3d at 1109 (quoting Wieburg v. GTE Sw. Inc., 272 F.3d 302, 308 (5th Cir. 2001) (citing cases)); Wright, Miller & Kane, *Federal Practice and Procedure*, § 1555 at 571 (3d ed. 2010) ("[I]t has been held that when the determination of the right party to bring the action was not difficult and when no

excusable mistake had been made, then Rule 17(a)(3) is not applicable and the action should be dismissed.")).

In the present case, Plaintiffs do not argue that there has been an understandable mistake in failing to properly name the deceased parties, nor have they shown difficulty in determining the name of the proper party or established that the request for substitution was made in a reasonable time and was not dilatory. Indeed, it is undisputed that Plaintiffs' counsel knew in February 2015 when he filed the Complaint that these Plaintiffs were deceased, as he so stated in the Complaint itself. Given that these individuals were deceased at the time the Complaint was filed, it stands to reason that Plaintiffs' counsel was not only aware of their personal representatives when the Complaint was filed, but that he had also secured their authorization before including their decedent in this lawsuit. Therefore, it is beyond dispute that the information that was needed to file identify the proper parties was available since before this case was filed. Nevertheless, Plaintiffs failed to correctly file the Complaint in the name of the proper parties and, did not do so until ordered by the Court, and even then, offered no explanation for the unreasonable delay in seeking to substitute the proper parties.

It is of no moment that after a year of litigation in this Court, the case was stayed for approximately one year and three

months (from March 28, 2016, to June 5, 2017) while on appeal to the Eleventh Circuit. (Docs. 134-142). Plaintiffs' counsel had the opportunity before filing suit to ascertain the proper parties to sue on behalf of the deceased Plaintiffs and had more than a year after filing suit (before the stay) to attempt to correct the complaint, and only filed the instant motions when instructed by the Court to do so or face dismissal. At no time during the more than two year pendency of this litigation has Plaintiffs' counsel made *even the slightest* effort on his own to correct the known, obvious, and critical deficiencies in the complaint regarding these Plaintiffs.

In a footnote in Plaintiffs' "reply brief," counsel states in a conclusory fashion that the motions to substitute the proper parties for the deceased Plaintiffs in this case have been filed "in a reasonable amount of time based upon the number of deceased parties, the complexity of this action, the number of overall claimants, the Eleventh Circuit appeal, the number of Defendants involved, and number of pleadings concerning this suit, to date. Additionally, the Plaintiffs filed their Motions for Substitution in accordance with the Court's July 17, 2017 Order." (Doc. 178 at 12 n.4). This explanation for Plaintiffs' dilatory conduct is unacceptable.

Under the circumstances set forth in detail above, Plaintiffs' stale and, for all practical purposes, compelled

14

request for leave to amend the Complaint to substitute the proper parties is too little too late. Cf. Engle, 767 F.3d at 1113-15 (affirming district court's refusal to allow the substitution of plaintiffs under Rule 17(a)(3) where plaintiffs failed to show that the mistakes in naming the real parties in interest were understandable, noting that (1) "Rule 17 was not promulgated to allow lawyers to file placeholder actions . . . to keep a limitations period open while they investigate their claims and track down the proper parties; (2) that "[i]f [counsel] lacked the resources required to fulfill his obligations to his clients *and the court*, he should have enlisted the services of another firm . . . or he should have pared down the volume of claims to something that he could manage;" and (3) that the court had discretion to deny leave to amend when the moving party's delay was dilatory or when the moving party offered no adequate explanation for the lengthy delay.).

Based on the circumstances presented here, the Court finds that Plaintiffs' delay in seeking leave to substitute personal representatives for the deceased Plaintiffs named in the Complaint is dilatory and that, to date, Plaintiffs have offered no adequate explanation for the unreasonable and lengthy delay. Accordingly, for each of the foregoing reasons, Plaintiffs' motions for leave to substitute personal representatives for the

15

sixteen Plaintiffs listed above (Docs. 155, 162), who were described as deceased in the complaint, are due to be **denied** and those Plaintiffs' claims are due to be **dismissed.**

In addition to the foregoing deceased Plaintiffs listed above, Plaintiffs' counsel did *not* request leave to substitute personal representatives for the following ten Plaintiffs who are also described in the complaint as deceased:

      (1) Burrell, Abraham (Doc. 1-1 ¶ 9);
      (2) Chandler, Mary (Doc. 1-1 ¶ 67);
      (3) Clay, Netta Jean (Doc. 1-1 ¶ 113);
      (4) Fails, Annie (Doc. 1-1 ¶ 31);
      (5) George, Adline (presumed dead) (Doc. 1-1 ¶ 40);
      (6) Jackson, Johnnie Mae Sta[c]ks (Doc.1-1 ¶¶54, 154);
      (7) Mitchell, Marie (Doc. 1-1 ¶ 165);
      (8) Saffold, Walter (Doc. 1-1 ¶ 170);
      (9) Shamburger, Carrie Bell (Doc. 1-1 ¶ 27);
      (10)Williams, Gertrude (Doc. 1-1 ¶ 124).

Accordingly, the claims of these ten Plaintiffs are due to be **dismissed.**[8]

**C. Ruby Mae Kinney**

Last, the Court addresses Plaintiffs' request for leave to

---

[8] The Court notes that, on November 13, 2017, Plaintiffs' counsel filed a Stipulation of Voluntary Pro Tanto Dismissal Without Prejudice, seeking to voluntarily dismiss some of the deceased Plaintiffs named in the complaint. (Doc. 216). Those individuals include Marvin Brown ¶14, Netta Jean Clay ¶113, Sidney Custer ¶25, Adline George ¶40, and Ida Parnell ¶93. In a separate Order dated November 17, 2017, the Court ruled that, absent an objection to the stipulation by Defendants, the motion would be granted on December 1, 2017, without further order from the Court. For the reasons set forth herein, as well as Plaintiffs' voluntary stipulation, those individuals are due to be dismissed.

16

substitute the personal representative of Ruby Mae Kinney, a Plaintiff named in the complaint (Doc. 1-1 at ¶ 61) who died on or about July 2, 2017.[9] (Doc. 163). Defendants have filed no objection to this request, other than to argue that the substitution would be futile because Plaintiffs' RICO claim does not survive death and Plaintiffs' state law claims have been waived. (Doc. 171 at 2-3, 9). For the following reasons, Defendants' argument is unavailing.

The issue of whether a civil RICO claim survives the death of a plaintiff has not been addressed by the Eleventh Circuit. However, in <u>Bradley v. Franklin Collection Serv., Inc.</u>, 2012 U.S. Dist. LEXIS 194084, *2-12, 2012 WL 12895015, *1-4 (N.D. Ala. Apr. 10, 2012), the court discussed this issue at length and held that a civil RICO claim does survive the death of a plaintiff, stating:

> Pursuant to Fed. R. Civ. P. 25(a)(1), "[i]f a party dies and the claim i[s] not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed." *Id.* On March 2, 2012, counsel for Plaintiffs submitted a notice of Melvin Bradley's

---

[9] Plaintiff's counsel filed this motion on July 31, 2017, twenty-nine days after Ms. Kinney's death. (Doc. 163).

death, doc. 53, and on March 12, 2012, the
Bradley Estate and Calma timely moved to
substitute the Bradley Estate for Melvin
Bradley, doc. 56. Franklin, however,
contends that Melvin Bradley's death
extinguished his civil RICO and FDCPA
claims, and accordingly, argues that
substitution is improper under Rule
25(a)(1). Doc. 58. *See also* doc. 1
("Complaint"). As it relates to civil RICO,
Franklin argues that these provisions are
penal in nature and therefore do not survive
the death of a plaintiff. . . . [A]s a
threshold matter, the court notes that
neither the civil RICO provisions nor the
FDCPA specifically address survival of
claims following the death of a party, and
"[i]n the absence of an expression of
contrary intent, the survival of a federal
cause of action is a question of federal
common law." United States v. NEC Corp., 11
F.3d 136, 137 (11th Cir. 1994). . . .

The parties agree that "resolution of the
[civil RICO] survivability issue depends on
whether the recovery is deemed 'remedial' or
'penal.'" NEC Corp., 11 F.3d at 137. "It is
well-settled that remedial actions survive
the death of the plaintiff, while penal
actions do not." Id. (citing Schreiber v.
Sharpless, 110 U.S. 76, 80 (1884); Kilgo v.
Bowman Transp., Inc., 789 F.2d 859, 876
(11th Cir. 1986)). . . . To further
complicate matters for this court, the
Eleventh Circuit has not opined on whether
civil RICO claims survive the death of a
plaintiff, and the other federal courts that
have addressed this issue have reached
diverging conclusions.

[I]n Faircloth v. Finesod, 938 F.2d 513, 518
(4th Cir. 1991), the Fourth Circuit found
that civil RICO claims are remedial and
therefore survive the death of a plaintiff.
The court began its analysis by describing
civil RICO as "a square peg, and squeeze it
as we may, it will never comfortably fit in

18

the round holes of the remedy/penalty dichotomy." Id. Nevertheless, in construing RICO liberally, as Congress directed, the court found that "the primary purpose of the private right of action created by RICO is remedial." Id. (citing Shearson/American Express, Inc. v. McMahon, 482 U.S. 220, 240-42 (1987)). The Fourth Circuit further reasoned that as "murder is a RICO predicate act, [ ] it would certainly be anomalous if a cause of action based on death did not survive the death of the would-be plaintiff. We cannot conclude that Congress ignored the brutal history of organized crime by providing a defense to criminals who have the foresight to kill their victims." Id.

Moreover, the Shearson decision, cited by Faircloth, lends support to a finding that civil RICO recovery is remedial, as opposed to penal, for purposes of survivability. See 220 U.S. at 240-42. . . .

The treble damages provision of civil RICO certainly contains some punitive effect, nevertheless, "the primary purpose of the private right of action created by RICO is remedial," and as such, a civil RICO claim survives the death of a plaintiff. Faircloth, 938 F.2d at 518 (emphasis added). See also PacifiCare Health Sys., 538 U.S. at 405-07; Shearson, 482 U.S. at 240-42. Accordingly, the court GRANTS the Bradley Estate's motion to substitute for the civil RICO claims.

Bradley, 2012 U.S. Dist. LEXIS 194084, *2-12, 2012 WL 12895015

at *1-4 (citing Faircloth v. Finesod, 938 F.2d 513, 515 (4th

Cir. 1991) (although decedent died before suit was filed, his

civil RICO claim survived his death).[10]

---

[10] As noted by the court in Bradley, Rule 25 provides, in part:

(Continued)

In the motion to substitute filed on July 31, 2017, counsel for Plaintiffs state that Ms. Kinney died on or about July 2, 2017. (Doc. 163 at 1). In that same motion, counsel moves to substitute Jeanette Curry as the personal representative for Ruby Mae Kinney in this case, and attaches Letters of Administration recognizing Ms. Curry as the personal representative of Plaintiff Kinney's estate. (Id.). Contrary to Defendants' argument, all of Ms. Kinney's claims are not extinguished in this case.[11] Therefore, under Rule 25, Ms. Curry is entitled to be substituted as Ms. Kinney's personal representative and as the proper party in this action.

Accordingly, Plaintiffs' timely motion to substitute Jeannette Curry as the personal representative for Plaintiff, Ruby Mae Kinney, is due to be **granted.**

---

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service of a statement noting the death, the action by or against the decedent must be dismissed.

Fed. R. Civ. P. 25(a)(1).

[11] Having found that Plaintiff's RICO claim survives death, the Court need not address, at this juncture, the issue of whether Plaintiff's state law claims have been waived.

### III. **Conclusion**

Upon consideration of all matters presented, the undersigned **RECOMMENDS,** for the reasons stated herein, that Plaintiffs' Motions for Leave to Substitute Personal Representatives be **granted** as to Plaintiff Ruby Mae Kinney (Doc. 163) and **denied** as to all other deceased individuals listed in the motions at issue (Docs. 155, 162, 164).

### NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72(b); S.D. ALA. LR 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." *11th*

*Cir. R. 3-1.* In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this **17th** day of **November, 2017.**

**/s/ SONJA F. BIVINS**
**UNITED STATES MAGISTRATE JUDGE**